## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANA DEFILLIPIS,                       :
                                        :
              Plaintiff,                :
                                        :
    v.                                  :      **3:14-CV-00115**
                                        :      **(JUDGE MARIANI)**
DELL FINANCIAL SERVICES, et al.,        :
                                        :
              Defendants.               :

### MEMORANDUM OPINION

#### I. INTRODUCTION

Presently before the Court is Defendant Dell Financial Services' Motion for Summary

Judgment (Doc. 31). In order to set up the narrow issue that is now before the Court in

conjunction with this Motion, it is necessary to briefly recount the procedural history of this

case. On December 9, 2013, Plaintiff, Shana Defillipis, filed a Complaint in the Lackawanna

County Court of Common Pleas, alleging a class action to recover damages for harassing

phone calls that she purportedly received from Defendant Dell Financial Services

(hereinafter, "DFS"). (*See generally* Compl., Doc. 3). The case was removed to federal

court on January 22, 2014. (Notice of Removal, Doc. 1). Before removal, Plaintiff obtained

a default judgment in the Court of Common Pleas. However, as discussed in greater detail

in a prior Opinion of this Court (Doc. 23), that default judgment was fatally tainted by

multiple improprieties. The Court therefore set aside the default judgment. (Order, Doc.

24). It also rejected Plaintiff's arguments that removal to federal court was untimely. (Doc. 23 at 14-15).

The Court then turned to the question of whether the Complaint can even advance in federal court at all, a question raised by DFS's "Motion to Dismiss or to Stay Proceedings and Compel Arbitration" (Doc. 4). Plaintiff's Complaint alleges relief on multiple grounds, (see Compl., Doc. 3 at 15-32), all of which depend, however, on the allegations that Plaintiff received numerous harassing phone calls from DFS in connection with its attempted collection of a debt, (see id. at ¶¶ 10-26). In its Motion to Dismiss or to Stay Proceedings and Compel Arbitration, DFS argued that, in the transaction giving rise to the underlying debt, Plaintiff consented to submit all claims of this nature to arbitration and waived her right to a judicial forum. (Def.'s Mem. in Supp. of Mot. to Dismiss, Doc. 5, at 3-4.) Applying Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764 (3d Cir. 2013), the Court determined that it was "unclear whether the arbitration agreement at issue in Plaintiff's Complaint is actually the one" to which DFS claimed she was subject. (Mem. Op., Doc. 25 at 4-5). Thus, it was "necessary for the Court to treat the Motion to Compel arbitration only in the context of a motion for summary judgment," and so the Court allowed the parties "time for limited discovery before the Court [could] rule on whether arbitration is warranted." (Id. at 5). On August 22, 2014, the Court issued an Order (Doc. 26) denying DFS's Motion (Doc. 4) "without prejudice to be refiled as a Motion for Summary Judgment requesting that the proceedings be stayed and arbitration be compelled, following the close of limited

2

discovery." The period of limited discovery was set for ninety days from the date of the Court's Order.

Subsequently, DFS filed its Motion for Summary Judgment (Doc. 31) and Memorandum of Law in Support thereof (Doc. 33) on December 11, 2014.[1] Plaintiff filed a Memorandum of Law in Opposition (Doc. 35) on December 31, 2014 and DFS filed a Reply Brief on January 8, 2015. The parties have fully briefed the motion and it is ripe for disposition. For the reasons set forth below, the Court will grant DFS's Motion for Summary Judgment and compel arbitration in this matter.[2]

## II. STATEMENT OF UNDISPUTED FACTS

In accordance with Local Rule 56.1, Defendant has submitted a Statement of Material Facts (Doc. 32) ("SMF"). Plaintiff subsequently submitted a "Counterstatement of Facts" (Doc. 36). Before reciting the undisputed facts in this matter, the Court must first

---

[1] Despite the Court's clear specification that DFS's Motion to Dismiss or to Stay the Proceedings and Compel Arbitration (Doc. 4) could "be refiled as a Motion for Summary Judgment requesting that the proceedings be stayed and arbitration be compelled, following the close of limited discovery," (Doc. 26), Defendant asks in its Memorandum of Law in Support of its Motion for Summary Judgment that the Court "grant summary judgment in favor of DFS as to all seven counts of the Complaint," (Doc. 33 at 25). Given the Court's prior Order and that the focus of DFS's Motion is on whether Plaintiff and Defendant ever concluded an agreement and on whether that agreement requires Plaintiff's claims to be immediately sent to arbitration (see, e.g., Doc. 33 at 5 ("[w]hether summary judgment should be granted in favor of DFS and Plaintiff ordered to arbitrate her claims . . . .")), the Court construes the Motion as a motion to stay the proceedings in federal court and compel arbitration rather than a Motion addressed to the merits of Plaintiff's allegations contained in her Complaint.

[2] With respect to the remaining Defendants, denominated in this matter only as "John Does 1-10" and "X, Y, Z Corporations," (see Compl., Doc. 1, Ex.3 at ¶¶ 6(b)-6(c)), Plaintiff has come forward with nothing that would allow this Court to continue this case as to them. But to the extent that John Does 1-10 and Corporations X, Y, Z are agents, employees, or representatives of DFS, they are also covered by the Arbitration Agreement. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993). Additionally, DFS's counterclaim in federal court, (see Answer, Doc. 27 at 42-43), is also covered by the Arbitration Agreement.

address the contents of Plaintiff's Counterstatement as it relates to Plaintiff's responsibilities

under this District's Local Rules of Civil Procedure and under the Federal Rules of Civil

Procedure.  In her direct responses to the nineteen numbered paragraphs of Defendant's

SMF, Plaintiff asserts that she either "cannot recall," "is unaware of," or "is not aware of" the

substance of Defendant's allegations, or that the substance of said allegations are

"unknown" to her.  (Id. at ¶¶ 1-19).  Plaintiff's responses contain absolutely no citation to

record evidence.  (Id.).  This is so even after the Court specifically gave the parties time in

which to conduct limited discovery in advance of this Motion.  (See Mem. Op., Doc. 25).

Plaintiff's submission at this stage of litigation simply does not comport with the

applicable rules of civil procedure.  Local Rule 56.1, "Motions for Summary Judgment,"

reads as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be
> accompanied by a separate, short and concise statement of the material
> facts, in numbered paragraphs, as to which the moving party contends there
> is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a
> separate, short and concise statement of the material facts, responding to the
> numbered paragraphs set forth in the statement required in the foregoing
> paragraph, as to which it is contended that there exists a genuine issue to be
> tried.
>
> Statements of material facts in support of, or in opposition to, a motion shall
> include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the
> moving party will be deemed to be admitted unless controverted by the
> statement required to be served by the opposing party.

"The purpose of this rule is to 'structure a party's summary judgment legal and factual

theory into a format that permits and facilitates the court's direct and accurate consideration

of the motion.'" *Hartshorn v. Throop Borough*, No. 3:07-CV-01333, 2009 WL 761270, at *3

(M.D. Pa. Mar. 19, 2009) (quoting *Gantt v. Absolute Machine Tools, Inc.*, No. 1:06-CV-1354,

2007 WL 2908254, at *3 (M.D. Pa. Oct. 4, 2007)).  The Middle District's rule is consistent

with the Federal Rules, which provide in relevant part that

> [i]f a party fails to properly support an assertion of fact or fails to properly
> address another party's assertion of fact as required by Rule 56(c), the court
> may:
>
> . . .
>
> (2) consider the fact undisputed for purposes of the motion; [or]
>
> (3) grant summary judgment if the motion and supporting materials –
> including the facts considered undisputed – show that the movant is entitled
> to it; . . . .

Fed. R. Civ. P. 56(e).  Indeed, the Advisory Committee's Notes on the 2010 Amendment to

Rule 56 specifically state that "Subdivision (e)(2) authorizes the court to consider a fact as

undisputed for purposes of the motion when response or reply requirements are not

satisfied. This approach reflects the 'deemed admitted' provisions in many local rules."

Thus, it is well within the Court's authority to deem DFS's facts admitted or, in other words,

to consider them undisputed for the purposes of analyzing DFS's Motion.

The Court is mindful, "[h]owever, [that] courts should not grant a motion for summary

judgment based upon a technical violation of civil procedure when it would require the court

5

to bypass the merits analysis required by Federal Rule of Civil Procedure 56." *Spencer v. Biggins*, No. 1:11-CV-01850, 2013 WL 5702312, at *1 (M.D. Pa. Oct. 18, 2013) (citing *Ullrich v. U.S. Sec'y. of Veterans Affairs*, 457 Fed. App'x 132, 137 (3d Cir. 2012)). The Court strives, as it must, to act in a manner consistent with Federal Rule 1, which provides that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Were there evidence from the Plaintiff in the record – even uncited evidence – the Court might be inclined to consider it under Federal Rule 56(c)(3), which provides that though "[t]he court need consider only the cited materials, [ ] it may consider other materials in the record." However, Plaintiff has introduced no evidence during the entire course of the litigation in support of the issue now before the Court – that is, whether she and DFS ever concluded an agreement in the first place, and, if so, whether that agreement requires the Court to compel arbitration at this point in time. The Court has surveyed the entirety of the record before it; the only Exhibits introduced by Plaintiff now, during the briefing on Defendants' Motion to Dismiss and Motion to Set Aside Default Judgment, and at the pleadings stage relate to the procedural history of this case in state court before it was removed to the Middle District. (*See, e.g.*, Lackawanna County Clerk/Judicial Records, Doc. 9, Ex. 1; Certified Mail Receipt, Doc. 9, Ex. 2; "USPS Tracking" Print Out, Doc. 9, Ex. 3). Thus, whether the Court considers Defendant's SMF admitted or undisputed or whether it goes in search of controverting evidence in the record, the result is functionally the same:

6

Defendant's facts are uncontroverted by any evidence of record.  Those facts are as follows:

On August 21, 2009, Plaintiff applied online for a Dell Preferred Account ("DPA") offered by CIT Bank and serviced by DFS.  (SMF, Doc. 32 at ¶ 1).  A DPA is a credit account for individual customers that is used to finance the purchase of computer-related goods and services from Dell Inc.  (Id. at ¶ 2.).  During the online application process, Plaintiff agreed to the Dell Preferred Account Credit Agreement ("Agreement").  (Id. at ¶ 3).  Under DFS's standard business practice in effect on August 21, 2009, Plaintiff or any other customer could not apply for and open a DPA without expressly agreeing that she had both read and agreed to the Agreement by clicking the appropriate box.  (Id. at ¶ 4.).  Specifically, an applicant had to affirmatively click a box agreeing: "I have read and agree to the Privacy Policy and Terms & Conditions, which contain important account information."  (Id. at ¶ 5.).  By clicking on the "Terms & Conditions" hyperlink in blue, an applicant could access the full text of the Agreement.  (Id.).  The box indicating that the applicant read and agreed to the Terms and Conditions was a required field and if the applicant did not affirmatively check it, she could not submit her application or open a DPA.  (SMF, Doc. 32 at ¶ 6).

In addition to providing online assent to the terms, within 48 hours of her application, Plaintiff was also sent a paper copy of the Agreement in the Welcome Package or Kit.  (Id. at ¶ 8.).  The Agreement at the top of the first page informed Plaintiff that she had an

additional opportunity to cancel and reject the Agreement.  (*Id*. at ¶ 9.).  Plaintiff made an

initial purchase of Dell products on August 31, 2009. (*Id*. at ¶ 10.).  According to DFS's

records, at no time has Plaintiff communicated that she rejected the Agreement governing

her DPA.  (*Id*. at ¶ 11.).  Plaintiff used her DPA to finance several additional purchased of

Dell products in 2010, 2011, 2012, and 2013.  (*Id*. at ¶ 12.).

The first page of the Agreement states:

**Notice:** This Credit Agreement contains an arbitration provision.  Under this arbitration provision, you may be required to settle any dispute with CIT Bank, Dell Financial Services and others through arbitration and not through a court proceeding.

(SMF, Doc. 32 at ¶ 14).  In all bold and all caps, the Agreement also states:

**THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE, PLEASE READ THIS PROVISION CAREFULLY.  IT PROVIDES THAT ANY CLAIM RELATING TO YOUR ACCOUNT MAY BE RESOLVED BY <u>BINDING ARBITRATION</u>.  YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT, AND ARBITRATION DECISIONS ARE SUBJECT TO VERY LIMITED REVIEW.  CLAIMS MAY BE ARBITRATED ONLY ON AN INDIVIDUAL BASIS.  <u>IF EITHER PARTY CHOOSES TO ARBITRATE A CLAIM, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM, OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIM</u>.**

(*Id*. at ¶ 15).  In all bold and all caps, the Agreement further provides that:

**YOU ACKNOWLEDGE THAT IF A CLAIM ARISES YOU MAY BE REQUIRED TO SETTLE THE CLAIM THROUGH ARBITRATION AND ARE GIVING UP YOUR RIGHTS TO LITIGATE THAT CLAIM IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER**

**RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS ACCESS TO DISCOVERY, MAY ALSO BE UNAVAILABLE OR MAY BE LIMITED IN ARBITRATION.**

(*Id*. at ¶ 16).  The arbitration clause states:

> **Arbitration**. Except as expressly provided herein, any claim, dispute or controversy (whether based upon contract, tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counterclaims, cross-claims and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim") shall be decided, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules and procedures of the arbitration administrator. . . .

(*Id*. at ¶ 17).  The agreement also provides:

> The party initially requesting arbitration shall select either the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS as the arbitration administrator. If the organization selected is unacceptable to you, you have the right to select either of the other organizations listed within 30 days after you receive notice of an election to arbitrate.

(*Id*. at ¶ 18).  Where DFS elected arbitration, as it has done here, DFS

> will pay the entire amount of the arbitration fees, including any required deposit. Notwithstanding any provision of this arbitration provision or the rules and procedures of the arbitration administrator, we will be responsible for payment and/or reimbursement of any arbitration fees to the extent that such fees exceed the amount of the filing fees you would have incurred if your claim had been brought in the state or federal court nearest your billing address with jurisdiction over the Claim.

(*Id*. at ¶ 19).

## III. STANDARD OF REVIEW

In evaluating DFS's earlier Motion to Dismiss or to Stay the Proceedings and

Compel Arbitration (Doc. 4), the Court, relying on *Guidotti*, 716 F.3d at 774, determined that

that particular motion "[did] not have as its predicate a complaint with the requisite clarity to

establish on its face that the parties agreed to arbitrate." Indeed, it was "unclear whether

the arbitration agreement at issue in Plaintiff's Complaint is actually the one" to which DFS

claimed she was subject. (Mem. Op., Doc. 25 at 4-5). This lack of clarity raised the issue

that "[i]f [Plaintiff] has not signed [DFS's proffered] agreement containing arbitration

language, [she] may not have agreed to submit grievances to arbitration at all." *Chastain v.*

*Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992); *see also Buckeye Check*

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (citing *Chastain*, 957 F.2d) ("The

issue of the contract's validity is different from the issue whether any agreement between

the alleged obligor and obligee was ever concluded.") Thus, "[a]fter limited discovery," the

Court now "entertain[s] a renewed motion to compel arbitration, this time judging the motion

under a summary judgment standard." *Guidotti*, 716 F.3d at 776.

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party moving

for summary judgment bears the burden of showing the absence of a genuine issue as to

any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a

showing has been made, the non-moving party must offer specific facts contradicting those

10

averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). Where the court denies summary judgment "because 'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause,' the 'court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same . . . .'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011) (some internal quotation omitted).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). If the party advancing the motion has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of
> *material* fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

### A. *Plaintiff and DFS Concluded an Agreement Including the Arbitration Provisions Set Forth by DFS*

As discussed above, *supra* Part II, the facts proffered by DFS in its SMF are

undisputed, given Plaintiff's failure to produce record evidence contradicting those

averments. If the Court accepts DFS's facts as supported by the record, it will be

undisputed that on August 21, 2009, Plaintiff applied online for a DPA offered by CIT Bank

and serviced by DFS and that, during the online application process, Plaintiff agreed to the

DPA Credit Agreement. (*Id.*). Recognizing this, Plaintiff claims that DFS "cannot prove"

12

that she and DFS "had a binding contract," (Mem. of Law in Opp. to Mot. for Summ. Judg., Doc. 35 at 9), and supports her claim by attacking the admissibility of the evidence used by DFS to support its rendition of the facts: in particular, Paragraph 7 of a signed declaration from Stephen J. Sippel, (id. at 17).

First, the Court notes the relevant parts of Mr. Sippel's declaration which the Court finds clearly admissible and uncontroverted by Plaintiff. DFS has proffered evidence in the form of Mr. Sippel's declaration that, in accordance with DFS's standard business practice in effect on August 21, 2009, Plaintiff or any other customer could not apply for and open a DPA without expressly agreeing that she had both read and agreed to the Agreement by clicking the appropriate box indicating: "I have read and agree to the Privacy Policy and Terms & Conditions, which contain important account information." (Doc. 33, Ex. 2 at ¶¶ 8-9). Mr. Sippel further declared that, as part of this standard business practice, the "Terms & Conditions" were hyperlinked in blue and that an applicant would have been able to access the full text of the Agreement by clicking on those blue, hyperlinked words. (Id. at ¶ 9). Mr. Sippel further reiterated that the box indicating that the applicant read and agreed to the Terms and Conditions was a required field and if the applicant did not affirmatively check it, she could not submit her application or open a DPA. (Id.). Additionally, Mr. Sippel declared that "[a]ccording to DFS's standard business practice, a printed copy of the Agreement was also sent to all customers as part of the Welcome Package within 48 hours of hours of [sic] the application." (Id. at ¶ 10). The Court finds that these statements are properly offered as

13

evidence of DFS's routine practice under Federal Rule of Evidence 406. Under Rule 406, "the court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."

Having established DFS's standard business practices on August 21, 2009, the crucial fact becomes whether Plaintiff availed herself of these standard processes by apply for a DPA account on August 21, 2009. Indeed, Plaintiff's concerns stem not from the propositions setting out DFS's business practices, but rather from their relationship to the antecedent condition asserted in Paragraph 7 of Mr. Sippel's Declaration. (*See, e.g.,* Doc. 35 at 17-18) (". . . [w]hile Federal Rule of Evidence 406 allows for 'habit' or 'standard practice' evidence to be admissible, Sippel's statement here falls flat, as it relies on Sippel's earlier hearsay-barred statement in paragraph 7 that an agreement existed at all."). Paragraph 7 provides that "[a]ccording to DFS's records, Plaintiff Shana Defillipis applied online for a DPA on August 21, 2009." (Doc. 33, Ex. 2 at ¶ 7). Plaintiff takes issue with the fact that, besides attaching the copy of the text of the Credit Agreement it alleges was applicable to Plaintiff, DFS has attached "none of DFS' vaunted business records." (Doc. 35 at 15). Plaintiff argues that Paragraph 7 of Mr. Sippel's declaration is thus inadmissible hearsay because DFS has not produced the original business records. (*Id.* at 17).

Plaintiff allows that the business records themselves might be admissible as a hearsay exception under Federal Rule of Evidence 803(6). (*Id.* at 16). It appears to the Court that, though she does not specifically reference the rule, Plaintiff is making an

argument based on Federal Rule of Evidence 1002, the "Original Writing Rule" (also denominated as the "Best Evidence Rule"). This Rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed R. Evid. 1002. "The purpose of the best evidence rule is to prevent inaccuracy when attempting to prove the contents of a document." *Washington-Pope v. City of Philadelphia*, No. CV 12-4300, 2015 WL 7450522, at *13 n.22 (E.D. Pa. Nov. 24, 2015). In its Reply Brief, DFS persuasively makes the case that much of Mr. Sippel's Declaration is admissible as evidence of DFS's routine practice under FRE 406, (Doc. 37 at 11-15), but fails to address head-on Plaintiff's arguments about Paragraph 7 and whether or not Plaintiff actually applied online for a DPA on August 21, 2009. In the main, DFS relies on the fact that, in her "Counterstatement of Facts" (Doc. 36), Plaintiff failed to deny the proffered fact that she applied for the account on that date, ignoring its own obligation to support its assertions with appropriate record evidence. The closest DFS comes to dealing with the issue is the following footnote:

> The type of corroboration documentation demanded by Plaintiff is legally unnecessary. But, to the extent that it is needed to satisfy Plaintiff's curiosity, we attached hereto as Exhibit 1 the Declaration of Nancy Giusti, which authenticates DFS's business records, namely database records and a computer "screen shot" memorializing Plaintiff's acceptance of the DFS Credit Agreement (including its arbitration clause).

(Doc. 37, at 15 n.2). DFS then includes business records, which the Court finds are properly authenticated by Nancy Giusti's signed Declaration, showing that Plaintiff applied

15

for a DPA on August 21, 2009 and that such an account was in fact opened on that date.

(Doc. 37, Ex. 2 at 7-9).

> The Court is mindful that

>> [t]here is cause for concern where a movant presents new arguments or evidence for the first time in a summary judgment reply brief, particularly if the District Court intends to rely upon that new information in granting summary judgment to the movant. *See, e.g., Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164 (10th Cir.1998) ("[W]hen a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond."); *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996) (a District Court should not consider new evidence raised in the reply to a motion for summary judgment without giving the nonmoving party an opportunity to respond); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 410 (1st Cir.1985) ("[T]he nonmoving party . . . should have had an opportunity to examine and reply to the moving party's papers before the court considered them in its decision process.").

*Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010). However, the Court does not view

the business records and the Declaration of Nancy Guisti that are attached to DFS's Reply

Brief as "new evidence." Indeed, these documents are merely a clarification of the earlier

evidence introduced in conjunction with DFS's Motion for Summary Judgment and are

responsive to Plaintiff's Memorandum of Law in Opposition to that Motion. The documents

are within the scope of both the Motion for Summary Judgment and the supporting

memorandum and Plaintiff's Memorandum of Law in Opposition.

Still, to the extent that Plaintiff thinks she may plausibly claim that she is unfairly

surprised by these documents entered into evidence with DFS's Reply, the Court will not

countenance such an argument. The Court previously allowed both parties ninety days to

conduct limited discovery on the very issue of whether Plaintiff did in fact open an account, and if so, under what terms, with the understanding that DFS had the opportunity to recast its Motion to Dismiss or to Stay the Proceedings and Compel Arbitration as a Motion for Summary Judgment after the close of discovery. In so doing, the Court fully expected the parties to take advantage of this opportunity to better understand their respective positions and, perhaps, to strengthen their cases. But in reviewing DFS's Motion for Summary Judgment and the related briefing, the only reference to discovery having been conducted that the Court has found is Plaintiff's representation that on November 7, 2014 she responded to a Request for Admissions from DFS. (Doc. 35 at 12). From that, the Court infers that DFS used the limited discovery period at least to send Plaintiff a Request for Admissions. But with respect to Plaintiff, the Court is left with the impression that she did nothing to help her case during that time. Had she sought to discover the business records attached to DFS's Reply Brief, she would certainly have been entitled to them, yet none of Plaintiff's submissions indicate that she even sought these records at all. Furthermore, as discussed above, *supra* Part II, Plaintiff failed to cite to any record evidence in responding to DFS's SMF. Nor has Plaintiff moved the Court for the opportunity to file a Sur-Reply Brief so that she may respond to the business records attached by DFS to its Reply Brief.

Plaintiff's approach to summary judgment and discovery in this litigation appears to have been to cover her eyes and ears so that she might avoid being confronted with

evidence harmful to her case.[3]  Procedural and evidentiary niceties aside, DFS has put

before the Court sufficient evidence to support its contention that Plaintiff did indeed apply

for a DPA account on August 21, 2009. Thus, the Court will now put a stop to Plaintiff's

litigation antics, finding that it would be unjust and further violative of Federal Rule of Civil

Procedure 1 to allow Plaintiff to continue to litigate this issue.  Indeed, "facts must be viewed

in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to

those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  If the party advancing the motion

has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of
> *material* fact.  When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

---

[3] The Court does not entirely approve of DFS's handling of the limited discovery period and
subsequent summary judgment motion.  The Court finds it somewhat disturbing that, understanding that it
was to prove whether Plaintiff indeed applied for a DPA account, and, if so, under what terms, DFS saw fit
in the first instance only to reintroduce the Declaration of Stephen J. Sippel, which it had previously
provided in conjunction with its Motion to Dismiss or to Stay the Proceedings and Compel Arbitration (Doc.
4), and not to provide the actual records relied upon by Mr. Sippel, instead seeking to capitalize on
Plaintiff's own failures to obey procedural rules.  At the same time, however, Plaintiff's attempt to avoid
providing a candid admission or denial of the facts set forth by DFS in its Statement of Material Facts
presents a tactic that is a "sharp practice" and self-defeating. *See Hickman v. Taylor*, 329 U.S. 495, 511
(1947).

*Id.* (internal quotations, citations, and alterations omitted). Here, there is no genuine

dispute for trial with regard to whether Plaintiff and DFS entered into the Credit

Agreement on August 21, 2009.

### B. Since There Is No Dispute of Fact That Plaintiff Has Agreed to Arbitrate Her Claims Against the Defendants, the Arbitrability of Those Claims Is for the Arbitrator to Decide

The Court now turns to the Credit Agreement to which Plaintiff agreed and the

enforceability of the arbitration provisions therein, and, in doing so, positions itself within the

sizeable body of substantive federal law on the issue. In passing the Federal Arbitration

Act, "Congress declared a national policy favoring arbitration and withdrew the power of the

states to require a judicial forum for the resolution of claims which the contracting parties

agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

Section 2 of the Act provides:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal to perform
> the whole or any part thereof, or an agreement in writing to submit to
> arbitration an existing controversy arising out of such a contract, transaction,
> or refusal, shall be valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Through Section 2, the Act "places arbitration agreements on an equal footing

with other contracts and requires courts to enforce them according to their terms" and

"reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center,*

*West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). "The preeminent

concern of Congress in passing the Act was to enforce private agreements into which

19

parties had entered," and, as such, courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (internal quotation omitted).

Plaintiff broadly challenges the Defendant's contention that she is bound to arbitrate her claims in this case. Though Plaintiff's arguments are often unclear, they appear to attack the conscionability of arbitration as a method of dispute resolution as a general matter. Plaintiff makes broad assertions about why the Arbitration Agreement is unconscionable, denouncing arbitration agreements as, *inter alia*, providing a forum beneficial to corporations and as offering a "get of jail free card" for illegal corporate activity. (*See, e.g.*, Doc. 9 at 3, 9).[4]

"If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that

---

[4] The Court cites to Plaintiff's "Memorandum of Law in Opposition to Defendant Dell Financial Services['s] Motion to Dismiss" (Doc. 9) because in her "Memorandum of Law in Opposition to Defendant Dell Financial Services['s] Motion for Summary Judgment" (Doc. 35) Plaintiff alerts the Court that she "will not reiterate her arguments about unconscionability here, but for the interest of preservation, she will incorporate same as if set forth at length." (Doc. 35 at 8). In so doing, Plaintiff violates Local Rule 7.8, which provides in relevant part that "[n]o brief may incorporate by reference all or any portion of any other brief," but the Court will overlook this violation due to the necessity of understanding what portion of the Credit Agreement and its Arbitration Agreement the Plaintiff challenges.

agreement . . . ." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *see also*

*Quilloin v. Tenet Health Sys. Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) ("Because

Quilloin did not agree to arbitrate the issue of arbitrability, and because she claims that the

arbitration agreement, specifically, is unconscionable, the District Court did not err in

addressing the validity of the agreement to arbitrate."). Thus, we must rule on whether the

Arbitration Agreement to which Plaintiff assented is valid before we compel arbitration here.

However, in our last Opinion, we rejected in detail Plaintiff's various attacks on

conscionability, and rejected them all. (*See* Mem. Op., Doc. 25 at 13-22). After reviewing

Plaintiff's conscionability challenges, we concluded: "The Court finds, if this arbitration were

properly before it and established as undisputed on a summary judgment motion, it could

not be found substantively unconscionable." (*Id.* at 20-21). Because substantive

unconscionability is a necessary element of establishing any unconscionability at all, we

concluded that, in the absence of new evidence, Plaintiff's unconscionability arguments

must fail *in toto*. But as discussed previously in the instant Opinion, Plaintiff has provided no

new evidence or arguments showing unconscionability, whereas DFS has adequately

established a true and accurate copy of the Arbitration Agreement. Thus, her

unconscionability arguments are rejected for the same reasons discussed in our Motion to

Dismiss Opinion.

Moreover, now that DFS has proved with competent evidence that Plaintiff

necessarily clicked on a box affirming that she "read and agree[d] to" the hyper-linked

Privacy Policy and Terms & Conditions in order to apply for and open a DPA account, as it has done here, (see Doc. 33, Ex. 2 at ¶ 9), the applicability to Plaintiff of the so-termed "clickwrap" Credit Agreement, including the arbitration provisions, also follows easily. The Court first summarized the law of clickwrap agreements in our Motion to Dismiss Opinion. (See Mem. Op., Doc. 25 at 11-13). We concluded that, at the summary judgment stage, we would need to determine whether the clickwrap agreement at issue here was more like that in *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002), where the Second Circuit invalidated a clickwrap agreement, or whether it was more like that in a growing body of district court cases that routinely uphold these agreements.[5] (*Id.* at 13). As the previous Opinion made clear, the *Specht* line of cases invalidating a clickwrap agreement typically "rest[s] on a finding that there is some fatal defect in the way that the Terms and Conditions of an agreement were posted, such that the person challenging the agreement cannot be considered to have actually known about the existence of the agreement." (*Id.* at 12).

But here, after limited discovery and summary judgment, it is uncontroverted that, while the Credit Agreement was only accessible by hyperlink, (see Stephen Stippel Decl., Doc. 33, Ex. 2, at ¶ 9), Plaintiff would still have had to affirm her assent to the Credit

---

[5] See, e.g., A.V. v. iParadigms, Ltd. Co., 544 F. Supp. 2d 473, 480 (E.D. Va. 2008), rev'd on other grounds by 562 F.3d 630 (4th Cir. 2009); Recursion Software, Inc. v. Interactive Intelligence, Inc., 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006); Person v. Google, Inc., 456 F. Supp. 2d 488, 496-97 (S.D.N.Y. 2006); Koresko v. RealNetworks, Inc., 291 F. Supp. 2d 1157, 1163 (E.D. Cal. 2003); Burcham v. Expedia, Inc., 2009 WL 586513, at *3 (E.D. Mo. 2009); see also Hancock v. Am. Telephone & Telegraph Co., Inc., 701 F.3d 1248, 1256 (10th Cir. 2012) ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'") (quoting Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1226 (D. Haw. 2010)).

Agreement before opening a credit account, (id. at ¶¶ 8-9). Furthermore, Plaintiff has failed

to point to evidence in the record that could create a genuine dispute of material fact as to

whether she understood that, by clicking on the hyperlink, she could access and review the

Privacy Policy and Terms and Conditions of the Credit Agreement. Accordingly, we are

influenced by the principle that

> clicking the hyperlinked phrase is the twenty-first century equivalent of turning
> over the cruise ticket. In both cases, the consumer is prompted to examine
> terms of sale that are located somewhere else. Whether or not the consumer
> bothers to look is irrelevant. "Failure to read a contract before agreeing to its
> terms does not relieve a party of its obligations under the contract." *See*
> *Centrifugal Force, Inc. v. Softnet Commc'n Inc.,* No. 08 Civ. 5463, 2011 WL
> 744732, at *7 (S.D.N.Y. Mar. 1, 2011) (enforcing clickwrap agreement in
> breach of contract action).

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012). Therefore, the Court

finds that Plaintiff had notice of the existence of the Agreement's terms and that she

manifested assent by clicking the associated box. Furthermore, the Court finds that Plaintiff

also manifested assent to Agreement when she failed to decline the terms and conditions of

the Agreement after a paper copy was mailed to her in accordance with DFS's standard

business practice at the time. (*See* Stephen Stippel Decl., Doc. 33, Ex. 2, at ¶ 7, 10). If

further evidence were needed to establish Plaintiff's assent to the terms and conditions

presented to her by DFS as the prerequisite to her ability to make purchases of goods or

services from Dell, Inc., then the evidence of her purchases in the exhibits attached to

DFS's Reply Brief more than suffice. (*See* Doc. 37, Ex. 2 at 10).

23

In conclusion, discovery has not altered our analysis of any of Plaintiff's attacks on the Arbitration Agreement. We must therefore hold her to her Agreement and compel this matter to arbitration.

## V. CONCLUSION

For the foregoing reasons, DFS's Motion for Summary Judgment is granted. The Court will stay the proceedings and compel arbitration. A separate Order follows.

Robert D. Mariani
United States District Judge